*Law Offices of*
*Michael G. Dowd*

MICHAEL G. DOWD
TERRENCE M. RANDELL

NIALL MACGIOLLABHUI*
*ADMITTED AS SOLICITOR,
REPUBLIC OF IRELAND

112 MADISON AVENUE - THIRD FLOOR
NEW YORK, NEW YORK 10016-7416
TELEPHONE (212) 751-1640 FAX (212) 398-2693
EMAIL: mdnita@aol.com

February 11, 2008

**VIA FEDERAL EXPRESS/ELECTRONIC FILING**

Honorable William H. Pauley, III
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

        Re: **U.S. v. Brendan Reid**
            **07 CR 682-02 (WHP)**
            **PRE-SENTENCE MEMORANDUM**

Dear Judge Pauley:

      The Supreme Court recently clarified in Gall v. U.S., 128 S.Ct. 586 (U.S., 2007) that, while the Guidelines should be the starting point in a sentencing proceeding, there are other important matters to be considered. Moreover, a sentencing court may not presume that the Guidelines range is reasonable. It must make an assessment of an appropriate sentence based on the individual facts presented. In so doing, 18 U.S.C. § 3553(a) lists a number of points a sentencing court must consider, the following of which are relevant to the present case.

      First of all, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1)

      Secondly, the sentence imposed must reflect the seriousness of the offense, promote respect for the law, and provide just punishment; it must also afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. § 3553(a)(2)

Honorable William H. Pauley, III
United States District Court
Southern District of New York
February 11, 2008
Page 2

      Finally, the court shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6)

      Mr. Reid was born in 1961, in a small village called Fintona in County Tyrone in Northern Ireland. This time was marked soon afterwards by the outbreak of the conflict known as "The Troubles". The seeds of this conflict were sown by the partition of Ireland following the War of Independence waged by Irish nationalists against the British Empire. Six of the thirty two counties of Ireland, including County Tyrone, remained in union with Britain and became known as Northern Ireland. The population of Northern Ireland was divided between the majority unionists, who considered themselves British and were identified with the Protestant religion, and the minority nationalists, who were identified with the Catholic religion. From its inception, Northern Ireland was governed by the unionist majority as a Protestant State, openly hostile to the Catholic minority in its midst. After decades of discrimination and oppression, this minority, inspired by the civil rights movement in the United States, began a similar campaign for equal status which was brutally repressed by the majority; Protestant mobs, aided and abetted by State police and paramilitary forces, attacked Catholic neighborhoods, leading to the largest forced movement of civilians in Europe since the Second World War. In response, the British government decided to send in the British army to restore order. Their presence was opposed by the Irish Republican Army, on the one hand, continuing a tradition of violent struggle for Irish unity, and supported by the Protestant State forces, along with Protestant paramilitary organizations, on the other. For Mr. Reid, a Catholic, discrimination and oppression; brutality by State forces and the British army; terror campaigns from Protestant paramilitaries; the constant fear and threat of violence, were a daily reality of life growing up in Fintona.

      He is the eleventh of fifteen children who were raised by his parents on a small farm. Ireland in the 1960s was an economically deprived country and Mr. Reid grew up in circumstances of serious poverty. He began working on the farm when he was only seven years old and was often kept home from school in order to do so. His formal education ended when he was only thirteen. He continued to work on the farm and later managed to learn a trade, becoming a mason. He spent a number of years searching for work wherever it was available. However, in 1982, at the age of 21, the scarcity of employment in the country, along with the marked escalation of "The Troubles", persuaded him to leave his homeland and come to the United Sates in the hope of making a better life for himself.

Honorable William H. Pauley, III
United States District Court
Southern District of New York
February 11, 2008
Page 3

      He arrived in New York and settled into a diligent, hardworking life. He was employed as a mason by various construction companies until 1990, when he met Martin McKernan, and they decided to go into business together. He also met his wife, Bernadette, in 1991, and they were married in 1996. They have four children together: Shane, aged 9 years; Laura, aged 6 years; Kiara, aged 4 years; and Emma, aged 18 months.

      Initially, Mr. Reid and Mr. McKernan handled all the work they received by themselves. Slowly but steadily the business grew, and they started to employ people. Unfortunately, there exists a widespread practice within the construction industry whereby workers are paid all or a portion of their wages in cash. Employers benefit by these payments by the avoidance of payroll taxes and by gaining a competitive advantage in a highly competitive industry. Nonetheless, prior to the period of his offenses, Mr. Reid's company developed a reputation as one of the few small companies that put its workers "on the books" and paid their taxes and benefits. Mr. Reid himself has always been honest in his personal financial affairs and paid his taxes accordingly. However, it is also the case that workers themselves demand cash payments, particularly for overtime work, and Mr. Reid and his business partner found themselves under enormous pressure to accede to these demands; not only to maintain the competitiveness of their company in bidding for contracts, but also to attract the workers needed to do the jobs. Alas, to Mr. Reid's great regret, they succumbed to this pressure. It has proven a terrible and costly mistake, both financially and psychologically, for Mr. Reid and his family.

      Apart from the criminal penalties he faces, Mr. Reid has seen his entire world, one he spent upwards of twenty years carefully building, fall apart. He has lost a thriving business; he faces significant financial consequences; and, most distressingly, his entire family has been forced to uproot and move to Ireland.

      Faced with the prospect of Mr. Reid's possible imprisonment, it was decided that Mrs. Reid, a homemaker with four young children, should return to Ireland where her extended family could support her through the ordeal. There was no substantial gain from Mr. Reid's illegal conduct that would allow his wife and children to live comfortably without him home and working. Mrs. Reid is finding the dislocation very difficult, both for herself and for the children. They all miss their old life in the United States and are struggling to adapt to the one that has been thrust upon them. In particular, the two eldest children, Shane and Laura, are extremely upset by the fact of their sudden uprooting and are finding the adjustment very traumatic: they have had their schooling in the United States cut short, they have been separated from their friends, they miss their father, and, worst of all, they are being stigmatized in school by his absence.

Honorable William H. Pauley, III
United States District Court
Southern District of New York
February 11, 2008
Page 4

       The factors under Section 3553(a) can be fulfilled by a non-guidelines sentence. The repercussions for Mr. Reid as a result of his offenses have been devastating; his story of the American Dream has been transformed into an unremitting nightmare. His life as he knew it, and the only life his children have ever known, is over. He has lost a business that represented the pinnacle of his life's work and to which he dedicated fifteen years of his life in order to provide a good life for his wife and his young family in the United States. This life has now been abruptly cut short, with detrimental and possibly enduring consequences. The results of Mr. Reid's actions are a great deterrent to others, particularly immigrants, who would contemplate doing likewise. Finally, Mr. Reid has been thoroughly and irreversibly chastened by his experience. He is absolutely not going to return to criminal behavior nor is he a danger to society.

       It is respectfully requested that if a term of incarceration is necessary, that the Court recommend the camp at Otisville, New York where Mr. Reid would have an opportunity to work on a daily basis.

                                                     Respectfully submitted,

                                                     Michael G. Dowd

/jr
cc: Harry A. Chernoff, Esq. (Via Federal Express/Electronic Filing)
    Assistant United States Attorney